UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAVIER DIAZ,

                Plaintiff,

   -against-

NHPI, LLC D/B/A THE INN AT NEW HYDE PARK,

               Defendants.
------------------------------------------------------------------X

**COMPLAINT**

No. 16-3182

**Jury Trial Demanded**

Plaintiff, Javier Diaz, by and through his attorneys, FAMIGHETTI & WEINICK, PLLC, alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This is a civil action based on Defendant's violations of Plaintiff's rights as guaranteed him by the Fair Labor Standards Act ("FLSA") and the New York State Labor Law and breach of contract, and any other cause of action which can be inferred from the facts set forth herein.[1]

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. Supplemental jurisdiction is invoked over State and local causes of action pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district and in Suffolk County.

---

[1] Plaintiff will be filing a charge of discrimination with the EEOC alleging age and disability discrimination against NHPI, LLC and intends to amend this complaint to assert those causes of action upon receipt of an intent to sue letter.

## PARTIES

4. Javier Diaz is a resident of Nassau County, New York.

5. NHPI, LLC d/b/a the Inn at New Hyde Park (the "Inn"), is corporation duly organized under the laws of the State of New York with its principal place of business in Nassau County, New York. The Inn operates a restaurant and catering hall and employees more than 25 employees. Defendant earns more than $500,000 in revenue per year.

## FACTS

6. In 1973, the Inn hired Diaz as a "cook."

7. Over the course of the next 40 years, managers, chefs, and perhaps hundreds of employees came and went at the Inn, but Diaz always remained as a loyal and effective cook, performing his responsibilities in an exemplary manner.

8. Indeed, on June 25, 2015, the Inn offered to Diaz a substantial raise and a three year promise of employment via an employment contract.

9. The employment contract did not set forth any terms by which the Inn could terminate Diaz before the three years elapsed.

10. The Inn did not require Diaz to "punch in" or "out" to record his hours, thus, Defendant does not have records indicating the hours which Diaz worked.

11. Though at some point Diaz became the de facto coordinator in the kitchen and would ensure

that all the other cooks in the kitchen were sharing cooking responsibilities, Diaz's essential job functions were cooking, i.e. preparing and cooking the food.

12. Diaz had no responsibility over hiring, firing, or setting employee pay nor did he order the food, create recipes, or set menus; these latter responsibilities were performed by the Executive Chef.

13. Throughout his employment, Diaz typically worked 55-65 hours per week.

14. For example, during the week of August 10, 2015, Diaz worked Monday 9:00a.m. to 6:00p.m., Thursday 9:00a.m. to 5:00p.m., Friday 9:00a.m. to 10:00p.m., Saturday 9:00a.m. to 10:00p.m., and Sunday 9:00a.m. to 10:00p.m., or 56 hours per week.

15. Similarly, during the week of November 2, 2015, Diaz worked Monday 9:00a.m. to 6:00p.m., Tuesday 9:00a.m. to 5:00p.m., Thursday 9:00a.m. to 5:00p.m., Friday 9:00a.m. to 10:00p.m., Saturday 9:00a.m. to 10:00p.m., and Sunday 9:00a.m. to 10:00p.m., or 64 hours per week.

16. The Inn, however, did not pay Diaz overtime for the hours he worked over 40 in a week.

17. Instead, the Inn paid him a flat salary, regardless of hours worked and Diaz understood that the "salary" paid for only the first forty hours of work in a week.

18. The examples above are merely representative weeks and are not meant to indicate these were the only weeks in which Diaz work; in fact, Diaz worked similar hours throughout his employment.

19. On December 25, 2015, Diaz was afflicted with what he thought was a stroke and immediately

sought medical treatment at a hospital.[2]

20. Ultimately, Diaz was diagnosed with Bell's Palsy which affected his ability to control his facial muscles and affected his major life activities of talking and seeing.

21. Further, it was obvious that Diaz suffered from a medical condition as he could not close one of his eyes, his speech was mumbled, and his mouth drooped on one side.

22. Notwithstanding, Diaz returned to work in early January.

23. Soon after his return to work, Diaz, admittedly, prepared the incorrect chicken dish for a wedding party.

24. Although Diaz had never in his forty-plus years of service made such a mistake and he told his supervisors that he made the mistake because of the vision problems he was experiencing from the Bells Palsy, the NHPI nonetheless issued to Diaz the first warning he had ever received at the Inn.

25. On March 18, 2016, the Inn hired Mark (last name unknown), also as a cook.

26. Mark is approximately 35 years old and Diaz is now 64 years old.

27. At the time of Mark's hire, there were no vacancies for cook.

---

[2] Plaintiff includes the following facts as support for the contemplated discrimination claims to be added upon receipt of rights to sue letter from the EEOC.

28. When Mark was hired, the Inn reduced Diaz's "salary" from $92,000 per year to $52,000 and reduced his hours to approximately 50 per week, but continued to fail to pay him overtime.

29. At such time, Diaz was able to perform the essential functions of his job.

30. In late March or early April 2016, Diaz suffered from a severe cold and/or flu.

31. He took several days of absence to recover, each day notifying the executive chef of his condition and absence.

32. On April 4, 2016, Diaz returned to work and was terminated, in contravention of the Inn's promise to employ Diaz through 2018.

33. Although the exit interview form does not indicate any reason for the termination, Diaz was told that the reason was that the Inn was "going in a different direction."

34. As this termination came just weeks after Mark's hire, a reasonable inference which can be drawn is that the "different direction" was the Inn's decision to replace Diaz with a younger, non-disabled employee.

## FIRST CLAIM
(Failure to Pay Overtime – FLSA)

35. Throughout his employment with Defendant, Diaz generally worked more than 40 hours per work week.

5

36. Defendant failed to pay Diaz time and a half for every hour worked more than 40 hours per week.

37. Defendant's conduct was willful as can be inferred from its' intentional misclassification of Diaz as an exempt employee, intended to prevent Diaz from receiving proper payments.

**SECOND CLAIM**
**(Failure to Pay Overtime – New York Labor Law)**

38. Throughout his employment with Defendant, Diaz generally worked more than 40 hours per work week.

39. Defendant failed to pay Diaz time and a half for every hour worked more than 40 hours per week.

**THIRD CLAIM**
(Failure to Pay Wages – FLSA)

40. Diaz did not agree that his salary would be paid for hours more than 40 in a week.

41. Accordingly, the law presumes that Diaz's weekly salary was payment for only the first 40 hours he worked in a week and he is owed wages for the hours worked over 40 in a week.

**FOURTH CLAIM**
(Failure to Pay Wages – NYLL)

42. As set forth above, Diaz worked hours for which he was not compensated at all by Defendant in violation of the NYLL.

**FIFTH CLAIM**
(Breach of Contract)

43. As set forth above, in exchange for Diaz's promise to continue working, the Inn agreed to

employ Diaz until June 2018.

44. The Inn breached such agreement by terminating Diaz in April 2016.

## **DEMAND FOR A JURY TRIAL**

45. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

**WHEREFORE,** Plaintiff demands judgment against Defendants, were applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, overtime pay, loss of benefits, reinstatement, injunctive relief, liquidated damages (where applicable), statutory damages, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Melville, New York
       June 16, 2016

                                          FAMIGHETTI & WEINICK, PLLC
                                          Attorneys for Plaintiff
                                          155 Pinelawn Road, Suite 220S
                                          Melville, N.Y. 11747
                                          (631) 352-0050

                    By:          /s/
                                    MATTHEW WEINICK